1873, based upon the truth of former statements in 1871.

BY THE COURT: I am afraid that counsel did not fully understand what I said to the jury on that point. What I attempted to say was this: that, if it was true, as Schempler stated, that the insured revealed to the company's examiner. in 1871 or 1872, the full extent of sunstroke in 1866, and the company then thought that it was of so little consequence that it ought not to hinder the renewal of the policies, the jury have the right to infer that it was not of such consequence as to make the statement of the insured a fatal mistake.

By defendant's counsel: We except, then, to the charge in these terms. I did understand it substantially as stated now. I think this point covers all the exceptions.

The jury, after an absence of about one hour, returned into court with a verdict in favor of plaintiff in the sum of $11,998.82.

[On writ of error. the judgment entered upon this verdict was affirmed.    104 U. S. 197.]

## Case No. 14,167.

### TREMAIN v. AMORY.

[Cited in First Nat. Bank of Hannibal v. Smith, 6 Fed. 216.  Nowhere reported; opinion not now accisible.]

TREMAINE (HITCHCOCK v.).  See Cases Nos. 6,538, 6,540.

TREMAINE, The KATE.  See Case No. 7,-622.

TREMLETT (NICHOLS v.).  See Case. No. 10,247.

## Case No. 14,168.

### Ex parte TREMONT NAIL CO.

### In re MIDDLEBORO SHOVEL CO.

[16 N. B. R. 448; 16 Alb. Law J. 417; 5 Cent. Law J. 482.] [1]

District Court, D. Massachusetts.    Nov. 22. 1877.

BANKRUPTCY—LIEN—EQUITABLE ASSIGNMENT.

A mere promise to pay out of a particular fund. when received, the promisor retaining control of such fund, and no notice being given to the person who is to pay, creates no lien or charge upon such fund.

The bankrupts were a copartnership, carrying on business under the firm name of the Middleboro Shovel Company. On the 28th day of June, 1877, Mr. Richardson. one of the partners, happened to meet in the cars Mr. Tobey. the treasurer of the Tremont Nail Company, and told him that he wanted to borrow about a thousand dollars to save him a journey to New York, where he could obtain it; that if the Tremont Nail Company would

lend him the money, it would be repaid out of the first money received from John Dunn, of New York, for whom they were filling a large order.  The loan was made, and a note for thirty days was given for it.  A few days after this Mr. Richardson went to New York, and found that the agents of his firm there were embarrassed, and about to fail, or had failed.  He received an advance of one thousand seven hundred dollars from Mr. Dunn, and returned to Boston on the 4th day of July, and consulted with his partner about their affairs.  On the 5th of July, he saw Mr. Tobey, and told him of the failure of his agents. and that he did not know how it would affect his firm, and whether he ought to pay Mr. Tobey or not; but the conclusion reached at that time was that the firm would go on for the present.  Early on Friday morning, July 6th, the money was paid to Mr. Tobey, and on the same day the firm stopped payment.  Negotiations were entered into for a settlement with their creditors, in the course of which complaint was made of the payment to the petitioners, and the money was then repaid to the Middleboro Shovel Company, with an express written agreement that the repayment should not prejudice the rights of the petitioners, but that they should "stand in precisely the same condition in which they would have remained if the said sum of nine hundred and ninety-four dollars and ninety-two cents had not been paid to the said Tremont Nail Company upon the said 6th of July, but had been laid aside, subject to the decision of a court of law in reference to its disposal."  The shovel company afterwards went into bankruptcy, and the Tremont Nail Company proved a debt against their estate upon certain other notes, concerning which there was no dispute, and claimed that this note should be admitted as a privileged debt, to be paid in full.  The case was heard by consent of parties upon oral evidence instead of a special case.

B. L. M. Tower, for petitioners.

(1) Security given, or payment made in pursuance of a valid and definite agreement entered into when the loan is made, is always valid. though the debtor may have become insolvent in the meantime.  Burdick v. Jackson, 15 N. B. R. 318, and cases there cited; In re Jackson I. M. Co. [Case No. 7,153]; Cook v. Tullis, 18 Wall. [85 U. S.] 332; Ex parte Fisher. 7 Ch. App. 636.

(2) The agreement gave the petitioners an equitable assignment of the money to come from Dunn.  Story, Eq. Jur. §§ 973. 1044. and cases; Smith, Manuel Eq. p. 245; 2 Spence, Eq. 860.

(3) Notice to the debtor is not essential to the valid assignment of a debt.  U. S. v. Vaughan, 3 Bin. [Penn.] 394; Muir v. Schenck, 3 Hill, 228; Littlefield v. Smith, 17 Me. 327; Dix v. Cobb, 4 Mass. 508; Warren v. Copelin, 4 Metc. [Mass.] 594; Wood v. Partridge, 11 Mass. 488.

[1] [Reprinted from 16 N. B. R. 448. by permission.  16 Alb. Law J. 417, contains only a partial report.]